IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **FRANK A. MOULTRIE,** ) | |
| ) | Case No. 16-00574-TOM-11 |
| ) | |
| **Debtor.** ) | |
| _____ ) | |
| ) | |
| **FRANK A. MOULTRIE,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | **ADVERSARY PROCEEDING** |
| **v.** ) | |
| ) | Case No. 16-00078-TOM |
| **FORD MOTOR COMPANY,** ) | |
| **CHARLES O. WALL, II; LONG-** ) | |
| **LEWIS OF THE RIVER REGION,** ) | |
| **INC.; TODD C. OUELLETTE, and** ) | |
| **TIMOTHY L. WITT** ) | |
| ) | |
| **Defendants.** ) | |

**BANKRUPTCY JUDGE'S REPORT AND RECOMMENDATION[1]
AND ORDER CERTIFYING CERTAIN COUNTS FOR TRIAL[2]**

This adversary proceeding came before the Court on June 13, 2018, for a hearing[3] on the

Motion for Summary Judgment filed by Defendant Charles O. Wall, II ("Wall"); the Response

filed by Plaintiff Frank A. Moultrie ("Moultrie"), and the Reply filed by Wall. Appearing before

---

[1] On most occasions this Court writes a memorandum opinion on a dispositive motion; however, a report and recommendation is required in this particular adversary proceeding. *See infra* pp. 5-6.

[2] Frank A. Moultrie, the Plaintiff, has made a jury demand. Before this Bankruptcy Court may conduct a jury trial, authorization by the District Court and consent of all the parties are required. *See infra* note 11 and accompanying text.

[3] Counsel for Frank A. Moultrie raised no written or verbal objection to the entry of final orders and judgments by this Court at either the August 6, 2018 status conference or at any time prior; thus Moultrie and his counsel have implied their consent and will be deemed to have consented to entry by this Court of any and all final orders and judgments in this matter. Charles O. Wall, II stated in his Answer to the Complaint that he did not consent to either the jurisdiction of, or entry of final orders by, this Court in this adversary proceeding. *See* Answer to Complaint filed by Wall, AP Doc. 56.

the Court were Cason M. Kirby, counsel for Moultrie; William Allen Sheehan, counsel for Wall; H. Lanier Brown, counsel for Ford Motor Company ("Ford") and Timothy L. Witt ("Witt"); and Douglas Barkley Hargett, counsel for Long-Lewis of the River Region, Inc. ("Long-Lewis") and Todd C. Ouellette ("Ouellette").[4]

**REPORT AND RECOMMENDATION**
**(PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW)**

*Jurisdiction*

This Court has jurisdiction over Moultrie's Chapter 11 bankruptcy case pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[5] Jurisdiction is defined as "the power of the court to decide a matter in controversy and presupposes the existence of a duly constituted court with control over the subject matter and the parties." *Black's Law Dictionary* 853 (6th ed. 1990) (citation omitted). The Court has previously stated that jurisdiction "is the authority of a court to adjudicate the legal dispute before it." *In re Adams Produce Co., LLC v. Frost Cummings Tidwell Group, LLC (In re Adams Produce Co., LLC)*, No. 12-02036-TOM-11, AP. No. 12-00138-TOM, 2013 WL 542472, at *1 (Bankr. N.D. Ala. Feb. 12, 2013) (citing *A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's)*, 227 B.R. 311, 320 (Bankr. N.D. Ala. 1998)).

Bankruptcy courts derive their jurisdiction by a conjunctive reading of three federal statutes enacted by Congress as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 codified in 28 U.S.C. §§ 1334, 151 and 157. *Adams Produce*, 2013 WL 542472, at *2.

---

[4] Two other motions for summary judgment were filed in this adversary proceeding; one by defendants Ford and Witt, and the other by defendants Long-Lewis and Ouellette. Both of those motions were granted by this Court on August 10, 2018. Wall is the only remaining defendant in this adversary proceeding.

[5] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

Determining that the action falls within the ambit of either §§ 1334 (a) and (b) is the first step in establishing jurisdiction. *Id.*

Federal district courts have original and exclusive jurisdiction of all cases under title 11. 28 U.S.C. § 1334(a).[6] Additionally, federal district courts have original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).[7] *Id.* Thus, as noted in *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987):

> Section 1334 lists four types of matters over which the district court has jurisdiction:
> 1. "cases under title 11",
> 2. "proceedings arising under title 11",
> 3. proceedings "arising in" a case under title 11, and
> 4. proceedings "related to" a case under title 11.

*Wood*, 825 F.2d at 92. *See also Wortley v. Bakst*, 844 F.3d 1313, 1318 (11th Cir. 2017) ("[t]he bankruptcy jurisdiction of the district courts extends to 'all civil proceedings arising under title 11 of title 11 [of the U.S. Code], or arising in or related to cases under title 11.'") (citing 28 U.S.C. § 1334(b)).

"The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction." *Wood*, 825 F.2d at 92. Proceedings "arising under title 11" are those that "involve a cause of action created or

---

[6] 28 U.S.C. § 1334(a) provides:
> Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

[7] 28 U.S.C. § 1334(b) provides:
> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

determined by a statutory provision of title 11." *Id.* at 96. The phrase proceedings "arising in" a case under title 11 "seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy.'" *Id.* at 97. *See also Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999); *Lawrence v. Goldberg*, 573 F.3d 1265, 1270-71 (11th Cir. 2009). Proceedings that are "related to" a bankruptcy are those in which "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). It is not necessary to distinguish between these four categories for the purpose of determining whether a particular matter falls within bankruptcy jurisdiction as "these references operate conjunctively to define the scope of jurisdiction." *Id*. at 94. "Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."[8] *Id.*

In *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir. 1990), the Eleventh Circuit Court of Appeals adopted the standard for "related to" jurisdiction as set out in *Pacor*:

> "The usual articulation of the test for determining whether a civil action proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

---

[8]As the Eleventh Circuit has noted, "[t]he 'related to' connection has been described as 'the minimum for bankruptcy jurisdiction.'" *In re Toledo*, 170 F.3d at 1345 (quoting E. Scott Fruehwald, *The Related to Subject Matter Jurisdiction of Bankruptcy Courts*, 44 Drake L. Rev. 1, 7 (1995)).

*Lemco Gypsum*, 910 F.2d at 788 (quoting *Pacor*, 743 F.2d at 994). *See also Wortley,* 844 F.3d at 1319 ("related non-core proceedings can be quite broad, encompassing matters that 'could conceivably have an effect on the estate being administered in bankruptcy.'") (quoting same). Because this adversary proceeding is related to the underlying bankruptcy case filed by Moultrie,[9] 28 U.S.C. 157(b)(3), (c)(1)-(2),[10] this Court has jurisdiction over this adversary proceeding.

*Authority to Enter a Final Order*

This Court can have jurisdiction but not be authorized to enter a final order. The Supreme Court has "held that Article III prevents bankruptcy courts from entering final judgment on claims that seek only to 'augment' the bankruptcy estate and would otherwise 'exis[t] without regard to any bankruptcy proceeding.'" *Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1941 (2015) (quoting *Stern v. Marshall*, 564 U.S. 462, 499, 131 S. Ct. 2594, 2614, 2618 (2011)). Bankruptcy courts may "'hear and determine' [non-core] proceedings, and 'enter appropriate orders and judgments,' only 'with the consent of all the parties to the proceeding.'" *Wellness*, 135

---

[9] "[A] civil proceeding is 'related' to a [bankruptcy] proceeding if the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1336 (11th Cir. 2017) (quoting *Nuveen Mun. Trust ex rel. Nuveen high Yield Mun. Bond Fund v. Withum Smith Brown, P.C.*, 692 F.3d 283, 293-94 (3rd Cir. 1984)) (internal quotation marks omitted). *See also Lemco Gypsum*, 910 F.2d at 788; *Pacor*, 743 F.2d at 994.

[10] 28 U.S.C. § 157(b)(3), (c)(1)-(2) provide as follows:
> (b)(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.
> …
> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

Because Wall has stated he does not consent to the jurisdiction of this Court or entry of final orders by this Court, this Report and Recommendation is being submitted to the District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 157(c)(1).

S. Ct. at 1940 (citing 28 U.S.C. § 157(c)(2)). Without such consent, a bankruptcy court "may only 'submit proposed findings of fact and conclusions of law'" for the district court's *de novo* review. *Wellness*, 135 S. Ct. at 1940 (quoting 28 U.S.C. § 157(c)(1)). *See also Wortley*, 844 F.3d at 1318.

This adversary proceeding is a "related to" proceeding, but without the consent of all parties, this Court cannot enter a final order.

*Jury Demand*

In this adversary proceeding, Moultrie made a jury demand. AP Docs. 1, 52. A bankruptcy court may conduct or conclude a jury trial if both authorized by the District Court and all parties have consented. Both conditions have not been satisfied and this Court, as part of this Order, is certifying any remaining counts as ready for a jury trial before the District Court.[11]

This Court has considered the pleadings, arguments of counsel, the exhibits, and the law, and submits its proposed findings of facts and conclusions of law as a Report and Recommendation to be transmitted to the United States District Court for the Northern District of Alabama.

## **FINDINGS OF FACT**[12]

Autauga Automotive, LLC ("Autauga") was formed in early July 2009 to acquire the assets of Gilmore Ford in Prattville, Alabama. Wall was an original organizer and member of Autauga, as was Jesse Mariner. After Ford rejected Mariner as a potential franchise owner for character reasons, Moultrie replaced him as co-owner of Autauga. In October 2009, Autauga entered a Sales

---

[11] "[T]he mere filing of a jury demand does not cause the Bankruptcy Court to lose 'jurisdiction' of the action(s) or mandate that the reference be withdrawn." *City Fire Equip Co. v. Ansul Fire Prot. Wormald U.S., Inc.*, 125 B.R. 645, 649 (N.D. Ala. 1989). Based on *City Fire*, where there is a jury demand and no consent to a trial in this Bankruptcy Court, this Court retains the adversary proceeding until (1) all discovery is complete and (2) all dispositive motions are resolved. *See infra* note 6. In this case, even if Moultrie had not made a jury demand, any order after a trial on the merits in this adversary proceeding would have similarly been transmitted to the District Court as a report and recommendation regarding the trial because Wall has not consented to entry of a final order by this Bankruptcy Court.
[12] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

and Service Agreement with Ford that established Autauga as an authorized dealer of Ford vehicles and that set out the rights and responsibilities of the parties to the Sales and Service Agreement. *See* Ford Sales and Service Agreement dated Oct. 1, 2009, filed under seal. The Sales and Service Agreement, on which Moultrie and Wall were listed as co-managers of the dealership possessing 51% and 49% equity ownership respectively, was not signed by either Wall or Moultrie individually.[13] Any proposed change to the ownership or management of Autauga had to be approved by Ford, but Ford could not unreasonably withhold its consent. Soon thereafter, Autauga was issued a new-motor-vehicle-dealer license by the Alabama Department of Revenue.

Several years later, Moultrie and Wall's business relationship deteriorated to the point of litigation, filed by Wall and Autauga against Moultrie, in the Circuit Court of Autauga County, Alabama. The case went to trial, and an order was entered in favor of Wall and Autauga on March 11, 2014 (the "March 2014 Order"). In the March 2014 Order the circuit court, noting that the plaintiffs sought a temporary restraining order as well as a declaratory judgment, determined, among other things, that "Wall had a 90% interest in the profits and losses and Moultrie had a 10% interest in the profits of the Company," but pursuant to Autauga's Operating Agreement Moultrie was divested of his interest in the company, leaving Wall as the 100% owner. *See* May 2014 Order, AP Doc. 83-2. On March 18, 2014, Wall executed the Second Amendment to the Articles of Organization of Autauga Automotive, LLC (the "Second Amendment to the Articles") reflecting that Wall was now the sole owner of Autauga.

On March 24, 2014, Moultrie filed a notice of appeal and a motion asking the circuit court

---

[13] At the bottom of the Sales and Service Agreement is a signature line for "Gilmore Ford (Dealer's Trade Name) By_____ (Title)_____." It appears that the contract was signed by Frank A. Moultrie on behalf of Autauga Automotive, LLC doing business as Gilmore Ford, although the signature is illegible. *See* Agreement dated October 1, 2009. The line where the title of the person signing the contract should have been written was left blank. The only other signatures on the document are those of Ford Motor Company representatives.

to stay the March 2014 Order pending appeal. The circuit court denied the motion the next day in a one-line order: "MOTION TO STAY filed by MOULTRIE FRANK A is hereby DENIED." *See* Autauga County Circuit Court Order dated Mar. 25, 2014, AP Doc. 85-13. This order prompted Moultrie to seek a stay from the Supreme Court of Alabama. In its order of April 23, 2014, the Supreme Court ruled: "IT IS ORDERED that the motion for stay is denied." *See* Alabama Supreme Court Order dated Apr. 23, 2014, AP Doc. 85-15. At no point did Moultrie ever post a supersedeas bond.

After the Second Amendment to the Articles was executed, the dealership then sent a letter to Ford indicating its intent to sell its assets to Long-Lewis, of which Ouellette was the chief executive officer. On April 30, having been provided a copy of the March 2014 Order and the Second Amendment to the Articles listing Wall as Autauga's sole owner, Ford and Autauga executed an amendment to the Sales and Service Agreement recognizing Wall as the lone manager and 100% equity interest owner. On May 21, Autauga, and Wall as a member of Autauga, entered into an Asset Purchase Agreement (the "APA") with Long-Lewis providing for a sale of Autauga's assets to Long-Lewis. *See* APA dated May 21, 2014, filed under seal.

In July, Autauga formally notified Ford it was resigning from the franchise, thereby terminating the Sales and Service Agreement between them. Autauga's resignation became effective on August 4, the day that Long-Lewis entered its own franchise agreement with Ford. On August 5, 2014, the asset purchase closing between Autauga and Long-Lewis pursuant to the APA was completed. According to Wall's Motion for Summary Judgment, the assets of Autauga were sold to Long-Lewis for less than the debt owed.

Moultrie filed a Chapter 11 bankruptcy petition in the Northern District of Florida in September 2014. On February 6, 2015, the Supreme Court of Alabama issued an opinion affirming

the circuit court's determination "that Wall had a 90% interest in the profits and losses of Autauga Automotive and that Moultrie had a 10% interest in the profits and losses" but reversing and remanding the portion of the March 2014 Order wherein the circuit court concluded that Moultrie had been divested of his interest. Alabama Supreme Court Opinion dated Feb. 6, 2015, AP Doc. 85-17 (the "Supreme Court Opinion").[14] Pursuant to the Alabama Supreme Court Opinion the circuit court entered its March 18, 2015 Order Pursuant to Remand which provided that "the portion of this Court's order of March 14, 2014 divesting Defendant, Frank Moultrie, of his interest in Autauga Automotive is set aside and judgment rendered in his favor on that issue." Autauga County Circuit Court Order Pursuant to Remand dated Mar. 18, 2015, AP Doc. 85-19.

Moultrie's bankruptcy case was transferred to this Court on February 16, 2016 after a creditor objected to venue in the Northern District of Florida. On August 5, 2016, Moultrie filed this adversary proceeding against Wall, Long-Lewis, Ouellette, Ford, and Witt, Ford's regional manager at the time of the underlying events.[15] Moultrie's Complaint, as amended, (the "Amended Complaint") asserts multiple Alabama statutory and common-law claims against Wall based on the sale of Autauga's assets and the amendment of the Sales and Service Agreement. Moultrie demanded a jury trial in both his original Complaint and Amended Complaint.

Discovery has concluded. On April 6, 2018, Wall filed a Motion for Summary Judgment (AP Doc. 84) on all claims along with a brief and evidentiary submission in support. Moultrie filed a Response Brief in Opposition on April 27, 2018 (AP Doc. 92), and thereafter on May 11, 2018, Wall filed his Reply (AP Doc. 99). Motions for Summary Judgment filed by defendants

---

[14] The Alabama Supreme Court's February 6, 2015 opinion has been published at *Moultrie v. Wall*, 172 So. 3d 828 (2015).

[15] The Complaint as originally filed did not include Witt as a defendant but did include Fictitious Defendants A, B, C, and D. Witt was brought into the adversary proceeding through the Amended and Restated Complaint filed May 2, 2017.

Ford and Witt, and by Long-Lewis and Ouellette, were granted by this Court on August 10, 2018. In granting those Motions for Summary Judgment, this Court determined that the defendants' reliance on the March 2014 Order precluded any liability they could potentially have to Moultrie. *See* Memorandum Opinions and Orders dated Aug. 10, 2018, AP Docs. 114, 115.

In his Motion for Summary Judgment Wall explains that in December 2015, after the Supreme Court Opinion was issued, Moultrie called a special meeting to discuss amending the Articles of Organization again to reflect his membership interest. Before the meeting Wall added to the agenda a discussion regarding a potential cash call. At that point Moultrie asked to postpone the meeting, but Wall declined. After that, the meeting took place but Moultrie did not attend. According to Wall, at the meeting he addressed the need for capital contributions and determined that if a member did not make the required contribution his capital interest would be decreased. Wall announced at the meeting "that since a rebalancing of the ownership interests in the Company may occur [if a member did not pay the capital contribution] that it would be premature to make a decision on ownership interests" at that time. Motion for Summary Judgement, AP Doc. 84. He also noted "that Moultrie ceased to be a Member" of Autauga at the time he filed his bankruptcy petition. *Id*. According to Wall, Moultrie's ownership interest was reduced to 0% since he did not contribute any capital for the cash call, and further, Wall claimed that Moultrie had never made any capital contributions at all. Not surprisingly, Moultrie disagrees. In his Response Brief in Opposition to Wall's Motion for Summary Judgment, Moultrie asserts that he contributed capital in the form of loan proceeds and used vehicle inventory.[16]

With the exception of Counts IX and XIII, the counts of the Amended Complaint are

---

[16] In Moultrie's Response Brief in Opposition to Wall's Motion for Summary Judgment, he refers to his deposition testimony regarding contributions that he made. He testified at his deposition that he contributed proceeds from a personal loan from River Bank made to both himself and Wall. Response, Ex. K, page 10.

directed against all of the "Defendants." Count IX is specifically directed at Wall, while Count XIII is specifically directed at Ford and Witt. Since it is not clear which of the remaining counts are asserted against Wall, the Court will assume all other counts have been asserted against him.

## CONCLUSIONS OF LAW

Wall has moved for summary judgment as to all counts of the Amended Complaint. Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides in relevant part that

> [a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56. The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 - 23 (1986). The court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "'[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1986). Once the moving party has satisfied its burden of proof by proving the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to offer evidence of specific facts which prove the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

Summary judgment has been granted in favor of defendants Ford, Witt, Long-Lewis, and Ouellette because any theory of liability Moultrie raised that would be applicable to these defendants is precluded due to their permissible reliance on the March 2014 Order.[17] However, the allegations applicable to Wall are not clearly confined to the time between the March 2014 Order and the reversal by the Alabama Supreme Court. Therefore, it is necessary to examine the counts in more detail.

### COUNTS I – VI

Counts I through VI of the Amended Complaint all concern violations of Alabama's Motor Vehicle Franchise Act, Alabama Code § 8-20-1, et seq: unlawful termination of franchise relationship, unlawful modification of franchise relationship, breach of obligation to act in good faith and deal fairly, unfair and deceptive trade practice - Ala. Code § 8-20-4(3)(d), unfair and deceptive trade practice - Ala. Code § 8-20-4(3)(r), and unfair and deceptive trade practice - Ala. Code § 8-20-4(3)(t). Section 8-20-14 of the Motor Vehicle Franchise Act (the "Act") provides:

> This chapter shall apply to **all franchise or dealer agreements** in force and effect on March 9, 2010, and to all franchise or dealer agreements, amendments, and renewals to dealer agreements made after March 9, 2010. . . . These provisions shall apply to **all written agreements between a manufacturer and dealer** including, but not limited to, the franchise offering, the franchise agreement, sales of goods, services or advertising, leases or deeds of trust of real or personal property, promises to pay, security interests, pledges, insurance contracts, advertising contracts, construction or installation contracts, servicing contracts, and other agreements between a dealer and a manufacturer.

Ala. Code § 8-20-14 (emphasis added). A "motor vehicle dealer" is defined as "[a] person operating under a dealer agreement from a manufacturer or distributor and who is engaged regularly in the business of buying, selling, or exchanging motor vehicles in this state and who has

---

[17] Memorandum Opinion and Order Granting Motion for Summary Judgment Filed by Defendants Long-Lewis of the River Region, Inc. and Todd C. Ouellette, AP Doc. 114; Memorandum Opinion and Order Granting Motion for Summary Judgement filed by Defendants Ford Motor Company and Timothy L. Witt, AP Doc. 115.

in this state an established place of business." Ala. Code § 8-20-3. A "dealer agreement or franchise" is defined as "[t]he written contract between any new motor vehicle manufacturer and any new motor vehicle dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract, and pursuant to which the dealer purchases and resells the franchise product or leases or rents the dealership premises." *Id*.

The Act applies to franchise and dealer agreements as well as other "written agreements between a manufacturer and dealer." By its terms, the Sales and Service Agreement, which sets out the rights and responsibilities of Ford and Autauga, is a "dealer agreement" as defined by the Act and thus falls under its purview. However, Ford and Autauga are parties to the Sales and Service Agreement, but neither Moultrie nor Wall are parties. Since a "dealer" is "[a] person operating under a dealer agreement," Moultrie cannot assert any cause of action that may be available under the Act. Therefore, summary judgment is due to be granted in favor of Wall as to Counts I through VI.

## COUNT VII

In this Count Moultrie alleges that Wall converted Moultrie's membership interest in Autauga. "To support a claim of conversion under Alabama law, the plaintiff must establish '(1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property.'" *Ellis v. City of Boaz*, No. 4:14-cv-02081-TMP, 2017 WL 897597, at *6 (N.D. Ala. Mar. 7, 2017).

After the March 2014 Order was entered Wall executed the Second Amendment to the Articles of Organization of Autauga Automotive, LLC to reflect that, pursuant to that Order, he owned 100% of the membership interests in the company. At the time this amendment was executed, Wall was entitled to rely on the March 2014 Order. However, according to the

subsequent Supreme Court Opinion, the circuit court incorrectly determined that Moultrie had no interest in Autauga. It appears from Wall's Motion for Summary Judgment that Autauga's records were never amended after the Supreme Court Opinion. Wall asserted in the Motion other reasons that Moultrie had no ownership interest in Autauga, namely his lack of capital contributions and the effect of his bankruptcy filing, but in his Response Brief in Opposition Moultrie claimed he provided capital in the form of loan proceeds and used vehicle inventory. There are genuine issues of fact that must be resolved as to Moultrie's membership interest before the question of conversion is addressed. Therefore, summary judgment is not appropriate as to Count VII.

## COUNT VIII

In Count VIII Moultrie again alleges conversion, this time as to what he purports is his share of the APA proceeds. At the time the APA was executed Wall acted under the March 2014 Order in which the circuit court declared him to be the owner of 100% of the membership interest in Autauga. Even though the Alabama Supreme Court determined the circuit court erred on that issue, Wall contends Moultrie had no membership interest for other reasons. As noted in the discussion of Count VII, there are genuine issues of fact regarding Moultrie's membership interest that must be resolved before the conversion allegations may be addressed. Therefore, summary judgment as to Count VIII is due to be denied.

## COUNT IX

In Count IX of the Amended Complaint, Moultrie alleges that "Wall failed to abide by the terms of the Operating Agreement in entering into the APA with Long-Lewis."[18] Amended Complaint, page 13. At the time the APA was executed, the portion of the March 2014 Order declaring Wall the only member of Autauga had not been reversed. Because Wall appropriately

---

[18] Moultrie did not allege that Wall breached the operating agreement in any way other than by entering into the APA.

relied on that Order, summary judgment is due to be granted as to Count IX.

## COUNT X

In Count X of the Amended Complaint Moultrie alleges that Wall breached the Sales and Service Agreement. Neither Moultrie nor Wall were parties to the Sales and Service Agreement. "It is well-settled law that 'one not a party to, or in privity with a contract, cannot sue for its breach.'" *Dunning v. New England Life Ins. Co.*, 890 So. 2d 92, (Ala. 2003) (quoting *Twine v. Liberty Nat'l Life Ins. Co.*, 311 So. 2d 299, 305 (Ala. 1975). *See also Russell v. Birmingham Oxygen Serv., Inc.*, 408 So. 2d 90, 93 (Ala. 1981) ("A third person has no rights under a contract between others unless the contracting parties intend that the third person receive a direct benefit enforceable in court.").[19] Since Moultrie was not a party to the Sales Agreement he cannot bring an action based on an alleged breach of the Agreement. Therefore, summary judgment is due to be granted in favor of Wall as to Count X.

## COUNT XI

In this Count Moultrie asserts that "Wall represented himself to be the sole member of Autauga Automotive" and thus the APA should be rescinded "[d]ue to fraud, misrepresentation of [a] material fact, or mutual mistake of [a] material fact . . . ." Amended and Restated Complaint, AP Doc. 52. Generally, only parties to a contract may rescind the contract.[20] 17B C.J.S. *Contracts* § 619 (Aug. 2018 update). Autauga, Long-Lewis, and Wall were the only parties to the APA and thus Moultrie cannot rescind the APA. Summary judgment is due to be granted in favor of Wall as to Count XI.

## COUNT XII

---

[19] *See Lisk v. Lumber One Wood Preserving, Inc.*, 792 F.3d 1331, 1338 (11th Cir. 2015) (citing *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101-02 (Ala. 1987)).
[20] Some jurisdictions allow a third party beneficiary to rescind a contract while others do not. 17B C.J.S. Contracts § 619 (Sept. 2018).

Moultrie contends that Wall converted "any lost profits and/or retained earnings" that came due to Moultrie when "he was improperly excluded as a member of Autauga . . . ." Amended Complaint, AP Doc. 52. This count is similar to Counts VII and VIII in that factual questions exist, that are disputed by the parties, regarding Moultrie's interest in Autauga and his right to profits or earnings that must be resolved before the issue of conversion may be addressed. Summary judgment is due to be denied as to Count XII.

## COUNT XIII

In this Count, Moultrie specifically alleges that "Ford and Witt intentionally disrupted or interfered with this business relationship among Moultrie, Wall and Autauga Automotive." Amended Complaint, AP Doc. 52. Moultrie does not make any allegations against Wall in this count; therefore, summary judgment is due to be granted as to Count XIII.

## COUNT XIV

Moultrie alleges that the Defendants conspired to accomplish a "squeeze out" of his interest in Autauga. According to the Alabama Supreme Court, "[t]he elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Alamo Title Co. (In re P.B. Surf, Ltd. v. Savage)*, 128 So. 3d 700, 713 (citing *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000)). "[T]here must be an 'actionable wrong' underlying the conspiracy claim. Speculations of misconduct fall short of the proof needed for conspiracy." Janelle Mims Marsh, *Alabama Law of Damages* § 36:24 (6th ed. Feb. 2018). In this adversary proceeding, the Court has granted summary judgment in favor of all defendants other than Wall on the grounds that their actions were protected, and not improper, as they were done in reliance on the March 2014 Order. Since there is no "actionable wrong" to support a claim of conspiracy, summary judgment is due to be granted

in favor of Wall on Count XIV.

## CONCLUSION

For the reasons stated above, this Court **RECOMMENDS** that Wall's Motion for Summary Judgment be **GRANTED** as to Counts I, II, III, IV, V, VI, IX, X, XI XIII, and XIV of the Amended and Restated Complaint; and

**FURTHER**, this Court **RECOMMENDS** that Wall's Motion for Summary Judgment be **DENIED** as to Counts VII, VIII, and XII of the Amended and Restated Complaint.

## ORDER CERTIFYING COUNTS FOR TRIAL

**WHEREAS** a jury trial has been demanded; and

**WHEREAS** 28 U.S.C. § 157 (e) provides for a jury trial by the Bankruptcy Court if authorized by the District Court and with the "express consent of all the parties," and the United States District Court for the Northern District of Alabama has entered such an order,[21] but in this case, there has not been an express consent by all of the parties;[22] and the procedure in this judicial district requires that all proceedings to be tried by a jury shall be retained by this Court until ready for trial then the trial shall be conducted in the District Court;[23] and

**WHEREAS** the Bankruptcy Court has as part of this Order recommended a ruling on summary judgment, and upon entry of a final order by the District Court on summary judgment, the remaining counts, if any, are ready for a trial by jury; therefore, it is

**ORDERED, ADJUDGED, AND DECREED** that upon entry of a final order of the District Court disposing of the Motion for Summary Judgment, the remaining counts, if any, of

---

[21] General Order of Reference Dated July 16, 1984, as Amended July 17, 1984, issued by the United States District Court for the Northern District of Alabama.
[22] Wall has stated he does not consent to the entry by this Bankruptcy Court of a final order in this adversary proceeding. *See* Answer to Complaint filed by Wall, AP Doc. 56.
[23] *See City Fire*, 125 B.R. at 649.

the Amended Complaint filed in this adversary proceeding are hereby **CERTIFIED** to the United States District Court for the Northern District of Alabama as ready for trial. It is further

**ORDERED, ADJUDGED, AND DECREED** that the Clerk of the Bankruptcy Court shall transmit this original Order, along with the pleadings in this adversary proceeding, to the Clerk of the District Court.

Dated: September 17, 2018 /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge